GRIFFITH OIL COMPANY, INC., et al., Appellants, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Respondent, et al., Defendants. (Appeal No. 2.) [892 NYS2d 711]—

Memorandum: Plaintiffs commenced this action seeking, inter alia, a declaration that defendant-respondent (hereafter, defendant) is obligated to indemnify them in underlying actions, and a proceeding brought against them in connection with a spur

pipeline oil leak in Steuben County (*see e.g. Steuben Contr. v Griffith Oil Co.*, 283 AD2d 1008 [2001]). We conclude that Supreme Court erred in granting the motion of defendant for partial summary judgment seeking a declaration that it is not obligated to indemnify plaintiffs under its policy with respect to the action commenced in Steuben County as well as a proceeding commenced by the United States Environmental Protection Agency (EPA). We note in addition that it appears on the record before us that the court granted relief beyond that sought by defendant by declaring that it also is not obligated to indemnify plaintiffs with respect to any "underlying property damage lawsuits regarding oil leaks from the Spur Pipeline." We instead conclude that the court should have granted that part of plaintiffs' cross motion for summary judgment seeking a declaration that defendant is obligated to indemnify them in the underlying actions and the proceeding commenced by the EPA, inasmuch as they established that the exception to the pollution exclusion clause in the policy is applicable herein, and defendant failed to raise an issue of fact sufficient to defeat that part of the cross motion (*cf. Griffith Oil Co., Inc. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 15 AD3d 982, 984 [2005]).

It is undisputed that the oil leak constitutes pollution and that the policy excludes coverage for property damage caused by a pollutant. The policy further provides, however, that the exclusionary clause does not apply to any property damage "that may arise out of the 'products completed operations hazard' for . . . [t]he sale, storage and/or transportation of fuels." "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning . . . , and the interpretation of such provisions is a question of law for the court" (*White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]). Plaintiffs established that the fuel in the spur pipeline was either being transported or stored. We note with respect to the term "products completed operations hazard" that such term typically defines an exclusion of coverage. Indeed, that term typically refers to an exclusion of coverage for damages caused by a product that was manufactured at or sold from the insured's premises and was then released into the stream of commerce where the injury occurred (*see Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 NY2d 169, 176 [1997]; *Logan's Silo Sales & Serv. v Nationwide Mut. Fire Ins. Co.*, 185 AD2d 651 [1992]; *Associated Mut. Ins. Coop. v Bader*, 10 Misc 3d 1028 [2005]). The term is also used to exclude coverage in connection with work performed by the insured that caused injury after the work was completed (*see Berger Bros. Elec. Motors, Inc. v New Amsterdam Cas. Co.*, 293 NY 523, 527 [1944]).

Here, however, the term "products completed operations hazard" defines coverage rather than an exclusion of coverage.

The policy defines the term "products completed operations hazard" in relevant part as " 'property damage' occurring away from premises you own or rent and arising out of 'your product' . . . except: [p]roducts that are still in your physical possession." Here, it is undisputed that the property damage occurred "away from premises" owned by plaintiffs and that the property damage arose as a result of fuel purchased by plaintiffs that leaked either while it was transported to plaintiffs' facility or stored in the spur awaiting transportation. Thus, we conclude that the property damage arose out of plaintiffs' product. The court erred in determining that the word "still" in the context of the phrase "still in your physical possession" required that the product have been sent into the stream of commerce from plaintiffs' facility in order to construe the policy as providing coverage. Thus, according to the court's interpretation, there would be coverage only in the event that the damage resulting from pollution occurred while plaintiffs were in the process of transporting it from the facility, after having received it. The policy, however, does not support that interpretation inasmuch as it does not specify that the damage resulting from the pollution must have occurred after the product was released from plaintiffs' facility into the stream of commerce (*cf. Associated Mut. Ins. Coop.*, 10 Misc 3d at 1030). Rather, the phrase "still in your physical possession" excludes coverage for damage from pollution that occurs on the insured's premises. Even assuming, arguendo, that the term "still" renders the clause ambiguous, we conclude that it must be read in favor of providing coverage, based on the well-settled principle that any ambiguity must be construed in favor of the insured (*see White*, 9 NY3d at 267).

Thus, although we conclude that the pollution exclusion applies based upon the unambiguous terms of the policy, we further conclude that the exception to that exclusion applies because the damage occurred away from premises owned by plaintiffs and was caused by plaintiffs' product during the storage or transportation of fuel.

All concur except Hurlbutt and Peradotto, JJ., who dissent and vote to affirm in the following memorandum.

Hurlbutt and Peradotto, JJ. (dissenting). We respectfully dissent. In our view, Supreme Court properly determined that the commercial general liability policy issued by defendant-respondent does not cover plaintiffs for property damage caused by an oil leak from a spur pipeline through which plaintiff Griffith Oil Company, Inc. (Griffith), a petroleum distributor,

received oil from its supplier. As the majority recognizes, the policy excludes coverage for property damage caused by a pollutant, i.e., the oil spill, unless an exception to the exclusion applies. In this case, an exception to the exclusion would apply in the event that the property damage arose out of a "products completed operations hazard." That term, as defined in the policy, includes property damage "occurring away from [the insured's] premises and arising out of '[the insured's] product' . . . except . . . [p]roducts that are still in [the insured's] physical possession." The insured's "product" is defined in relevant part as "[a]ny goods or products . . . manufactured, sold, handled, distributed or disposed of by" the insured. It is undisputed that the oil that leaked from the spur pipeline had not yet come into Griffith's possession, but was awaiting delivery.

In *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.* (91 NY2d 169 [1997]), the Court of Appeals noted in addressing a product-hazard exclusion that "[t]he distinct risk of loss occasioned by a defect in the insured's product, which manifests itself only after the insured has relinquished control of the product and at a location away from the insured's normal business premises, is covered by the purchase of separate 'products hazard' coverage" (*id.* at 176). Thus, product-hazard insurance is intended to cover "events that occur after [the] insured's product is placed in the stream of commerce" (*id.*). Here, inasmuch as the oil was spilled before it ever came into the possession of Griffith, it had not been placed in the stream of commerce, nor was it "manufactured, sold, handled, distributed or disposed of" by Griffith. We thus agree with the court that the pollution exclusion applies, and we would affirm. Present—Scudder, P.J., Hurlbutt, Peradotto, Green and Gorski, JJ.